IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FOREST GILLIAM,** | : | |
| | : | |
| Petitioner, | : | CIVIL NO. 3:CV-05-2351 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| **RONNIE HOLT,** | : | |
| | : | |
| Respondent. | : | |

## M E M O R A N D U M

### I.   Introduction

Petitioner, Forest Gilliam, an inmate at the Schuylkill Federal Correctional Institution ("FCI-Schuylkill") in Minersville, Pennsylvania, commenced this *pro se* action with a petition for writ of habeas corpus (Doc. 1) filed pursuant to the provisions of 28 U.S.C. § 2241. Thereafter, Petitioner filed a motion for leave to proceed *in forma pauperis* (Doc. 4). Petitioner alleges abuse of authority and racially motivated disparate treatment of inmates by corrections officers at SCI-Schuylkill, resulting, *inter alia*, in excessive punishment of Petitioner (loss of privileges and good conduct time) for a misconduct on July 24, 2005. He seeks "to have his phone privileges, visiting privileges, and his 87-days Good Conduct time returned to him . . . ."  (Doc. 1 at 20).  For the following reasons, the petition will be summarily dismissed without prejudice, allowing the Petitioner to pursue his claims under the appropriate statutory provisions.

### II.   Background

On July 25, 2005, Petitioner was issued disciplinary incident report # 1365027 (Doc. 1, Ex. D) for allegedly fighting with another person and possession of a weapon.  The officer that issued the report stated that a review of video surveillance tapes revealed

Petitioner and another inmate engaged in "mutual combat" at 5:56:50 p.m. on July 24, 2005.  The tapes show that facial punches and body blows were mutually exchanged, fire extinguishers were used as potential weapons in the altercation, and the fight ended when the participants stopped and returned to their cells.  (Doc. 1, Ex. D at 2.)

Petitioner received a hearing on the incident report on August 15, 2005.  (*Id*. at 1.) At the conclusion of the hearing, Petitioner was found to have committed the offense of fighting with another inmate, and the charge of possession of a weapon was expunged. (*Id*. at 3.)  As a result, Petitioner was sanctioned with 30 days disciplinary segregation, disallowance of 27 days GCT, forfeiture of 60 days non vested GCT, 180 days loss of telephone and visiting privileges, and a disciplinary transfer.  (*Id*.)  The instant petition ensued.  Petitioner claims that: (1) the sanctions are racially motivated; (2) the prison officials abused their authority by ordering his transfer; and (3) intake personnel improperly processed another inmate.  (Doc. 1 at 6.)

**III.**    **Discussion**

    **A. Summary Dismissal of Habeas Petition**

Habeas corpus petitions brought under § 2241 are subject to summary dismissal pursuant to Rule 4 ("Preliminary Consideration by the Judge") of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1(b)).  *See, e.g.*, *Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979).  Under Rule 4, the judge is required to screen habeas corpus petitions, and "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  A petition may be

2

dismissed without review of an answer "when the petition is frivolous, or obviously lacking in merit, or where . . . the necessary facts can be determined from the petition itself . . . ." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir.) *Accord U.S. ex rel. DeCreti v. Wilson*, 967 F.Supp. 303 (N.D.Ill. 1997). The *Allen* court also stated that "the District Court has a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face." 424 F.2d at 141.

A petition for writ of habeas corpus may be brought by a prisoner who seeks to challenge the fact or duration of the prisoner's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Georgevich v. Strauss*, 772 F.2d 1078, 1086 (3d Cir. 1985). To the extent that Petitioner seeks restoration of telephone and visiting privileges, denial of transfer, or relief on intake personnel's treatment of another inmate, he is not challenging the duration or propriety of his sentence. Instead, Petitioner is challenging the conditions of his confinement. The favorable resolution of these issues will not result in the Petitioner's release, nor an adjustment in the remainder of time on his sentence.[1] In *Ali v. Gibson*, 572 F.2d 971 (3d Cir. 1978), the United States Court of Appeals for the Third Circuit stated that an attack on the conditions of confinement is cognizable in a federal habeas action only in extreme cases. *Gibson*, 572 F.2d at 975, n.8 [citing *Willis v. Ciccone*, 506 F.2d 1011, 1014-15 (8th Cir. 1974)]. However, the Petitioner does not plead any facts which would establish this as an extreme case. Additionally, if the Petitioner is allowed to proceed with these issues in the instant habeas action, he would be able to evade the higher filing fee for a civil

---

[1]Moreover, in regard to the issue of "the Intake staff's inability to properly investigate all incoming inmates . . . [which] resulted in [another inmate] coming straight back into general population" (Doc. 1 at 20.), Petitioner does not have standing to challenge the treatment of another inmate.

3

rights action and he would potentially circumvent restrictions of the Prison Litigation Reform Act, including the "three strikes" provision of 28 U.S.C. §1915(g).  Consequently, this Court is unable to grant the requested relief on Petitioner's civil rights claims in the context of a habeas petition; this relief, if appropriate, would be granted in the context of a civil rights claim.  Nevertheless, Petitioner also seeks restoration of good conduct time ("GCT"), and such a claim is cognizable in the context of a habeas corpus proceeding, and the Court will address the merits of the claim.

### B.  Loss of Good Conduct Time

#### i.  Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution provides some protection to Petitioner's interest in his GCT.  The Fourteenth Amendment states in pertinent part:  "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property(,)'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'"  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  *Torres v. Fauver*, 292 F. 3d 141, (3d Cir. 2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Nevertheless, the Supreme Court

found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses GCT. *Id.* Therefore, since Petitioner was sanctioned with the disallowance of 27 days GCT and forfeiture of 60 days non vested GCT, this Court will review the procedures afforded to Petitioner in the disciplinary hearing as they relate to the loss of GCT.

### ii. Procedural Due Process

In *Wolff*, the Supreme Court set forth minimum procedural due process requirements for prison disciplinary proceedings: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.*

The Court noted that broad discretion is accorded to the prison officials, with limited judicial review of institutional due process to determine if their decision is arbitrary or capricious. *Id.* In *Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill*, 472 U.S. 445, 453-56 (1985), the Supreme Court added a procedural requirement, holding that there must be some evidence which supports the conclusion of the disciplinary tribunal. *Id.*[2]

---

[2]After *Hill*, the Third Circuit indicated that the standard to be applied in disciplinary proceedings was that contained in 28 C.F.R. §541.17(f), which at the time was a "substantial evidence" test. *Henderson v. Carlson*, 812 F.2d 874, 879 (3d Cir. 1987). Subsequently, the Bureau of Prisons amended its regulations to be more akin to the *Hill*

5

The due process requirements of *Wolff*, as they relate to federal prisoners, have since been codified under the Code of Federal Regulations. Under Title 28, §541, inmate discipline and special housing units, staff shall prepare an Incident Report when there is reasonable belief that a violation of Bureau regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14.

The BOP regulations provide that each BOP institution shall have an independent hearing officer, or disciplinary hearing officer ("DHO") assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts. 28 C.F.R. § 541.16(a). Furthermore, the DHO shall conduct hearings, make findings, and impose appropriate sanctions for incidents of inmate misconduct. 28 C.F.R. § 541.16(c). Based on the record, the Court concludes that Petitioner was afforded the full requirements of due process in his disciplinary hearing.

In this case, Petitioner received a copy of the incident report on July 26, 2005, the day after it was issued. (Doc. 1, Ex D at 1.) Thereafter, a hearing was held on August 15, 2005. A review of the record reveals that Petitioner appeared at the hearing, and he received written notice of the charges nearly three (3) weeks prior to the hearing. The DHO questioned Petitioner, during which Petitioner "admitted the charge(s). He elaborated upon his plea by stating, the report is true." (*Id*. at 3.) Petitioner waived his right to an inmate representative, he did not request witnesses, and he received a written decision setting

---

holding by requiring only that the DHO's decision be "based upon at least some facts," with the decision to be "based on the greater weight of the evidence." 28 C.F.R. §541.17(f) (1995).

forth the evidence relied upon and the rationale for the decision. (*Id.* at 1-4). Thus, the Court concludes that Petitioner received the requisite due process requirements set forth in *Wolff*.

### iii. Evidence Supporting Decision

Since Petitioner was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision. *See Hrbek v. Nix*, 12 F.3d 777 (8th Cir. 1993). After a review of the record, the Court concludes that there was more than ample evidence to support the DHO's decision. The DHO relied upon memoranda by three corrections officers responding to reports of the altercation, inmate injury assessment forms for both Petitioner and the other inmate involved in the altercation, Petitioner's testimony, and photographs taken by an investigating officer. (Doc. 1, Ex D at 2.) This evidence sufficiently supports the outcome of the hearing, and Petitioner's challenge to the disciplinary proceeding and sanctions will be denied. An appropriate order follows.

Dated: December 30, 2005              /s/ A. Richard Caputo
                                                                A. RICHARD CAPUTO
                                                                United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FOREST GILLIAM,** | : | |
| | : | |
| Petitioner, | : | CIVIL NO. 3:CV-05-2351 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| **RONNIE HOLT,** | : | |
| | : | |
| Respondent. | : | |

# O R D E R

**AND NOW, THIS 30th DAY OF DECEMBER, 2005,** in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT**:

1. Petitioner's motion to proceed *in forma pauperis* (Doc. 4) is **GRANTED** for the limited purpose of filing this petition.

2. The petition for writ of habeas corpus (Doc. 1) is **DISMISSED** without prejudice to any right Petitioner may have to reassert the civil rights claims in a properly filed civil rights action.

3. The Clerk of Court is directed to mark this case closed.

4. Based upon the Court's conclusion herein, there is no basis for the issuance of a certificate of appealability.

5. The Clerk of Court is directed to provide Petitioner with a copy of the form used in filing a civil rights action, as well as the form used for filing a habeas corpus action.

        /s/ A. Richard Caputo  
        A. RICHARD CAPUTO  
        United States District Judge